

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1635-10

### THE STATE OF TEXAS

**v.**

### ROY ANDREW WEAVER, Appellee

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE NINTH COURT OF APPEALS
### POLK COUNTY

         **KELLER, P.J., filed a dissenting opinion in which KEASLER, and HERVEY, JJ., joined.**

Justice Gaultney's dissent is correct: Appellee's Fourth Amendment rights were not violated because the dog sniff was not a "search."[1] The Court concedes that a dog sniff is not a search under the Fourth Amendment[2] but then contends that the dog sniff in this case was illegal because the police were not entitled to be where they were. The Court arrives at this curious conclusion through

---

[1] *See State v. Weaver*, No. 09-10-00116-CR, slip op. at 8-10, 2010 Tex. App. LEXIS 7425, at 9-12 (Tex. App.–Beaumont, September 8, 2010) (Gaultney, J., dissenting)(not designated for publication.)

[2] *See City of Indianapolis v. Edmond*, 531 U.S. 32 (2000).

two steps. First, the Court contends that we must assume that the place where the van was parked was not a public area.[3] Second, the Court contends that the police should have inferred that appellee withdrew his consent to be where the van was parked before the dog sniff was conducted.[4] Neither of these contentions withstands scrutiny.

The Court decides that we must infer that the "parking lot" was not open to the public because there was evidence that it was adjacent to a loading dock and because the trial court made an "implicit finding" that it was not open to the public.[5] The Court does not contend that the area where the van was parked was surrounded by a fence or some other type of enclosure, and the record would not support such a contention. Nothing in the record suggests that the area was inaccessible to the public, and there is no reason to believe that a person on the street could not have walked up to the so-called loading dock. Consequently, the record does not support the notion that the place where the van was parked was a private area to which the general public was forbidden access.

Moreover, the Court's use of an "implicit" fact finding conflicts with our recent decision in *State v. Elias*.[6] In *Elias*, we held that when a trial court issues findings of fact but does not make a fact finding on a pertinent issue, an appellate court must assume that the trial court made no finding at all on the matter.[7] The appropriate action under that circumstance is for the appellate court to

---

[3] Court's op. at 10-13.

[4] *Id.* at 16.

[5] *Id.* at 12-13.

[6] 2011 Tex. Crim. App. LEXIS 448, at 22 (April 6, 2011)

[7] *Id.* at 22 ("We think the more appropriate presumption, after *Cullen*, is that the explicit findings of fact that the trial court *did* enter are those it deemed "essential" to its ruling, and that it made no finding of fact whatsoever with respect to other fact or credibility issues because it regarded

remand "for entry of additional, specific findings of fact with respect to th[e] dispositive issue."[8]  In the present case, the trial court made no fact-finding regarding whether the area where the van was parked was open to the public.  The trial court simply found that the van was on appellee's property next to his shop.  That finding does not necessarily entail a conclusion that the parking area was in a private part of the business; it is completely consistent with the parking area being owned by the defendant but in a place that was open to the public.  If the record does not reveal whether the parking area was private or public, and that issue is necessary to the proper disposition of the case, then rather than make an "implicit" finding, this Court must, under *Elias,* remand the case to the trial court for a fact-finding on the matter.

With respect to the second step of its analysis, the Court decides that the police should have realized that appellee was withdrawing his consent for them to be in the parking area when he refused to consent to the search of the van.[9]  But consent to be in the parking area and consent to search the van are separate issues.  The Court sets a dangerous precedent in equating, "You can't search my van," with, "Get off of my property."  Appellee had already consented to the officers' presence at the business.[10]  He never withdrew that consent.  The Court is essentially saying that the police were trespassers on appellee's property—but the law of trespass requires a notice to depart after a consensual entry.[11]  No such notice was given.

them (however erroneously) as peripheral or non-essential to its ultimate legal holding.").

[8]  *Id.* at 23.

[9]  Court's op. at 16.

[10]  Consent was not necessary, but it had been given.

[11]  *See* TEX. PENAL CODE § 30.05(a)(2).

The Court also says that the officer who brought the drug dog from the patrol car routed the dog "presumably through [appellee's] office, into the welding workshop, and over to the van parked at his loading dock."[12]  But the only testimony in that regard is that the officer did not take the dog inside "the premise."  The Court seems to have badly misconstrued the testimony about the layout of the business.  The Court says that the "bay area" or "salle port" was in the back of the workshop, but it was not.  According to the record, there was an office in front, a shop toward the rear, and a bay area ("salle port").  The van was in the bay area, which was—contrary to the Court's opinion—not "around back" with the other vehicles.  The van was "next to the building," "back[ed] up to the bay door."  The area at the back of the van was "just inside the shop."  It appears to me that the bay was at the front of the building, next to the office, and not in the part of the business where the welding took place.  And my understanding of the location of the bay area is consistent with the trial court's explicit finding of fact that the van was located "beside the defendant's shop" and inconsistent with the Court's understanding that the van was in back of the workshop.

But even if the record would support a finding that the dog went through the office, under *Elias*, we cannot imply it here.  If the route the dog took is considered important to the decision in this case, and if the record would support the Court's finding, then we would need to remand this case to the trial court for a finding on the matter.

I would hold that the courts below erred in deciding that the dog sniff violated appellee's Fourth Amendment rights.  Concluding that no Fourth Amendment violation occurred in this case, I would reverse the judgments of the courts below and remand to the trial court for further proceedings.  Even if my assessment of the record were incorrect, and there did exist some evidence

---

[12]  Court's op. at 17.

to support a Fourth Amendment violation, I would follow *Elias*, under which the only proper course

is to remand to the trial court for fact findings on the pertinent issues.

I respectfully dissent.

Filed: September 28, 2011
Publish